(Slip Opinion) OCTOBER TERM, 2017 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## UNITED STATES *v.* SANCHEZ-GOMEZ ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 17–312.   Argued March 26, 2018—Decided May 14, 2018

The judges of the United States District Court for the Southern District of California adopted a districtwide policy permitting the use of full restraints—handcuffs connected to a waist chain, with legs shackled—on most in-custody defendants produced in court for nonjury proceedings by the United States Marshals Service.  Respondents Jasmin Morales, Rene Sanchez-Gomez, Moises Patricio-Guzman, and Mark Ring challenged the use of such restraints in their respective cases and the restraint policy as a whole.  The District Court denied their challenges, and respondents appealed to the Court of Appeals for the Ninth Circuit.  Before that court could issue a decision, respondents' underlying criminal cases ended.  The court—viewing the case as a "functional class action" involving "class-like claims" seeking "class-like relief," 859 F. 3d 649, 655, 657–658—held that this Court's civil class action precedents saved the case from mootness.  On the merits, the Court of Appeals held the policy unconstitutional.

*Held*: This case is moot.  Pp. 3–12.

   (a) The federal judiciary may adjudicate only "actual and concrete disputes, the resolutions of which have direct consequences on the parties involved."  *Genesis HealthCare Corp.* v. *Symczyk,* 569 U. S. 66, 71.  Such a dispute "must be extant at all stages of review, not merely at the time the complaint is filed."  *Preiser* v. *Newkirk*, 422 U. S. 395, 401.  A case that becomes moot at any point during the proceedings is thus outside the jurisdiction of the federal courts.  See *Already, LLC* v. *Nike, Inc.,* 568 U. S. 85, 91.  Pp. 3–4.

   (b) In concluding that this case was not moot, the Court of Appeals relied upon this Court's class action precedents, most prominently *Gerstein* v. *Pugh,* 420 U. S. 103.  That reliance was misplaced. *Gerstein* was a class action respecting pretrial detention brought under

Syllabus

Federal Rule of Civil Procedure 23. The named class representatives' individual claims had apparently become moot before class certification. This Court held that the case could nonetheless proceed, explaining that due to the inherently temporary nature of pretrial detention, no named representative might be in custody long enough for a class to be certified. *Gerstein* does not support a freestanding exception to mootness outside the class action context. It belongs to a line of cases that this Court has described as turning on the particular traits of Rule 23 class actions. See, *e.g., Sosna* v. *Iowa*, 419 U. S. 393; *United States Parole Comm'n* v. *Geraghty*, 445 U. S. 388; *Genesis HealthCare*, 569 U. S. 66. The Federal Rules of Criminal Procedure establish for criminal cases no vehicle comparable to the civil class action, and this Court has never permitted criminal defendants to band together to seek prospective relief in their individual cases on behalf of a class. Here, the mere presence of allegations that might, if resolved in respondents' favor, benefit other similarly situated individuals cannot save their case from mootness. See *id.*, at 73. That conclusion is unaffected by the Court of Appeals' decision to recast respondents' appeals as petitions for supervisory mandamus. Pp. 4–9.

    (c) Respondents do not defend the reasoning of the Court of Appeals, and instead argue that the claims of two respondents—Sanchez-Gomez and Patricio-Guzman—fall within the "exception to the mootness doctrine for a controversy that is capable of repetition, yet evading review." *Kingdomware Technologies, Inc.* v. *United States*, 579 U. S. ___, ___ (internal quotation marks omitted). Respondents claim that the exception applies because Sanchez-Gomez and Patricio-Guzman will again violate the law, be apprehended, and be returned to pretrial custody. But this Court has consistently refused to "conclude that the case-or-controversy requirement is satisfied by" the possibility that a party "will be prosecuted for violating valid criminal laws." *O'Shea* v. *Littleton,* 414 U. S. 488, 497. Respondents argue that this usual refusal to assume future criminal conduct is unwarranted here given the particular circumstances of Sanchez-Gomez's and Patricio-Guzman's offenses. They cite two civil cases—*Honig* v. *Doe,* 484 U. S. 305, and *Turner* v. *Rogers,* 564 U. S. 431—in which this Court concluded that the expectation that a litigant would repeat the misconduct that gave rise to his claims rendered those claims capable of repetition. But *Honig* and *Turner* are inapposite because they concerned litigants unable, for reasons beyond their control, to prevent themselves from transgressing and avoid recurrence of the challenged conduct. Sanchez-Gomez and Patricio-Guzman, in contrast, are "able—and indeed required by law"—to refrain from further criminal conduct. *Lane* v. *Williams*,

Syllabus

455 U. S. 624, 633, n. 13.  No departure from the settled rule is war-
ranted.  Pp. 9–12.

859 F. 3d 649, vacated and remanded.

ROBERTS, C. J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

------------

No. 17–312

------------

## UNITED STATES, PETITIONER *v.* RENE SANCHEZ-GOMEZ, ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[May 14, 2018]

CHIEF JUSTICE ROBERTS delivered the opinion of the Court.

Four criminal defendants objected to being bound by full restraints during pretrial proceedings in their cases, but the District Court denied relief. On appeal, the Court of Appeals for the Ninth Circuit held that the use of such restraints was unconstitutional, even though each of the four criminal cases had ended prior to its decision. The question presented is whether the appeals were saved from mootness either because the defendants sought "class-like relief" in a "functional class action," or because the challenged practice was "capable of repetition, yet evading review."

I

It is the responsibility of the United States Marshals Service to "provide for the security . . . of the United States District Courts." 28 U. S. C. §566(a). To fulfill that duty, the United States Marshal for the Southern District of California requested that the judges of that district permit the use of full restraints on all in-custody defendants during nonjury proceedings. When "full restraints" are

applied, "a defendant's hands are closely handcuffed to-
gether, these handcuffs are connected by chain to another
chain running around the defendant's waist, and the
defendant's feet are shackled and chained together." 859
F. 3d 649, 653 (CA9 2017) (en banc). In support of his
proposal, the Marshal cited safety concerns arising from
understaffing, past incidents of violence, and the high
volume of in-custody defendants produced in the Southern
District. The judges agreed to the Marshal's request, with
modifications providing that a district or magistrate judge
may require a defendant to be produced without re-
straints, and that a defendant can request that this be
done. See App. 78–79.

Respondents Jasmin Morales, Rene Sanchez-Gomez,
Moises Patricio-Guzman, and Mark Ring were among the
defendants produced by the Marshals Service for pretrial
proceedings in full restraints. They raised constitutional
objections to the use of such restraints in their respective
cases, and to the restraint policy as a whole. They noted
that the policy had resulted in the imposition of full re-
straints on, for example, a woman with a fractured wrist,
a man with a severe leg injury, a blind man, and a wheel-
chair-bound woman. The District Court denied their
challenges.

Respondents appealed to the Court of Appeals for the
Ninth Circuit, but before the court could issue a decision,
their underlying criminal cases came to an end. Morales,
Sanchez-Gomez, and Patricio-Guzman each pled guilty to
the offense for which they were charged: Morales, to felony
importation of a controlled substance, in violation of 21
U. S. C. §§952 and 960; Sanchez-Gomez, to felony misuse of
a passport, in violation of 18 U. S. C. §1544; and Patricio-
Guzman, to misdemeanor illegal entry into the United
States, in violation of 8 U. S. C. §1325. The charges
against Ring—for making an interstate threat in violation of
18 U. S. C. §875(c)—were dismissed pursuant to a deferred-

prosecution agreement.

A panel of the Court of Appeals nonetheless concluded that respondents' claims were not moot, and went on to strike down the restraint policy as violating the Due Process Clause of the Fifth Amendment. 798 F. 3d 1204 (CA9 2015). Those rulings were reaffirmed on rehearing en banc. 859 F. 3d 649. The en banc court understood the "main dispute" before it to be a challenge to the policy itself, not just to the application of that policy to respondents. *Id.,* at 655. The court then construed respondents' notices of appeal as petitions for mandamus, which invoked the court's supervisory authority over the Southern District. *Id.,* at 657. The case was, in the court's view, a "functional class action" involving "class-like claims" seeking "class-like relief." *Id.,* at 655, 657–658. In light of that understanding, the Court of Appeals held that this Court's civil class action precedents kept the case alive, even though respondents were no longer subject to the restraint policy. *Id.,* at 657–659 (citing *Gerstein* v. *Pugh*, 420 U. S. 103, 110–111, n. 11 (1975)). On the merits, the Court of Appeals concluded that the restraint policy violated the Constitution. 859 F. 3d, at 666.

Judge Ikuta, writing in dissent for herself and four colleagues, rejected the majority's application of class action precedents to the individual criminal cases before the court and would have held the case moot. *Id.,* at 675. She also disagreed with the majority on the merits, concluding that the restraint policy did not violate the Constitution. *Id.,* at 683.

We granted certiorari. 583 U. S. \_\_\_ (2017).

## II

To invoke federal jurisdiction, a plaintiff must show a "personal stake" in the outcome of the action. *Genesis HealthCare Corp.* v. *Symczyk*, 569 U. S. 66, 71 (2013). "This requirement ensures that the Federal Judiciary

confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." *Ibid.* Such a dispute "must be extant at all stages of review, not merely at the time the complaint is filed." *Preiser* v. *Newkirk*, 422 U. S. 395, 401 (1975). A case that becomes moot at any point during the proceedings is "no longer a 'Case' or 'Controversy' for purposes of Article III," and is outside the jurisdiction of the federal courts. *Already, LLC* v. *Nike, Inc.*, 568 U. S. 85, 91 (2013).

A

In concluding that this case was not moot, the Court of Appeals relied upon our class action precedents, most prominently *Gerstein* v. *Pugh*. That reliance was misplaced.*

*Gerstein*, a class action brought under Federal Rule of Civil Procedure 23, involved a certified class of detainees raising claims concerning their pretrial detention. 420 U. S., at 106–107. By the time this Court heard the case, the named representatives' claims were moot, and the record suggested that their interest might have lapsed even before the District Court certified the class. See *id.,* at 110–111, n. 11. Normally a class action would be moot if no named class representative with an unexpired claim remained at the time of class certification. See *ibid.* (cit-

───────────

* Shortly after the panel decision in this case, the Southern District altered its policy to eliminate the routine use of full restraints in pretrial proceedings. The Government represents, however, that the Southern District intends to reinstate its policy once it is no longer bound by the decision of the Court of Appeals. Tr. of Oral Arg. 29. We agree with the Court of Appeals that the rescission of the policy does not render this case moot. A party "cannot automatically moot a case simply by ending its unlawful conduct once sued," else it "could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where [it] left off, repeating this cycle until [it] achieves all [its] unlawful ends." *Already, LLC* v. *Nike, Inc.*, 568 U. S. 85, 91 (2013).

ing *Sosna* v. *Iowa*, 419 U. S. 393, 402, n. 11 (1975)). The Court nevertheless held that the case remained live. As we explained, pretrial custody was inherently temporary and of uncertain length, such that we could not determine "that any given individual, named as plaintiff, would be in pretrial custody long enough for a district judge to certify the class." *Gerstein*, 420 U. S., at 110–111, n. 11. At the same time, it was certain that there would always be some group of detainees subject to the challenged practice. *Ibid.* Given these circumstances, the Court determined that the class action could proceed. *Ibid.*; see *Swisher* v. *Brady*, 438 U. S. 204, 213–214, n. 11 (1978) (employing same analysis in a class action challenging juvenile court procedures).

The Court of Appeals interpreted *Gerstein* to cover all "cases sufficiently similar to class actions" in which, "because of the inherently transitory nature of the claims," the claimant's "interests would expire before litigation could be completed." 859 F. 3d, at 658. *Gerstein* was an action brought under Federal Rule of Civil Procedure 23, but the Court of Appeals decided that such "a procedural mechanism to aggregate the claims" was not a "necessary prerequisite" for application of the *Gerstein* rule. 859 F. 3d, at 659 (alteration omitted). Respondents, the court noted, sought "relief [from the restraint policy] not merely for themselves, but for all in-custody defendants in the district." *Id.,* at 655. Those "class-like claims" seeking "class-like relief" were sufficient to trigger the application of *Gerstein* and save the case from mootness, despite the termination of respondents' criminal cases. 859 F. 3d, at 655.

We reject the notion that *Gerstein* supports a freestanding exception to mootness outside the class action context. The class action is a creature of the Federal Rules of Civil Procedure. See generally 7A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure §1751 *et seq.* (3d ed.

2005). It is an "exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only," and "provides a procedure by which the court may exercise . . . jurisdiction over the various individual claims in a single proceeding." *Califano* v. *Yamasaki*, 442 U. S. 682, 700–701 (1979). "The certification of a suit as a class action has important consequences for the unnamed members of the class." *Sosna*, 419 U. S., at 399, n. 8. Those class members may be "bound by the judgment" and are considered parties to the litigation in many important respects. *Devlin* v. *Scardelletti*, 536 U. S. 1, 7, 9–10 (2002). A certified class thus "acquires a legal status separate from the interest asserted by the named plaintiff." *Genesis HealthCare*, 569 U. S., at 74 (quoting *Sosna*, 419 U. S., at 399; alterations omitted).

*Gerstein* belongs to a line of cases that we have described as turning on the particular traits of civil class actions. The first case in this line, *Sosna* v. *Iowa*, held that when the claim of the named plaintiff becomes moot after class certification, a "live controversy may continue to exist" based on the ongoing interests of the remaining unnamed class members. *Genesis HealthCare*, 569 U. S., at 74 (citing *Sosna*, 419 U. S., at 399–402); see *Franks* v. *Bowman Transp. Co.*, 424 U. S. 747, 755–756 (1976). The "fact that a putative class acquires an independent legal status once it is certified" was, we later explained, "essential to our decision[ ] in *Sosna*." *Genesis HealthCare,* 569 U. S., at 75; see *Kremens* v. *Bartley*, 431 U. S. 119, 131–133 (1977) (explaining that, under *Sosna*'s rule, "only a 'properly certified' class . . . may succeed to the adversary position of a named representative whose claim becomes moot"); *Alvarez* v. *Smith*, 558 U. S. 87, 92–93 (2009) (same).

*Gerstein*, announced one month after *Sosna*, provides a limited exception to *Sosna*'s requirement that a named plaintiff with a live claim exist at the time of class certifi-

cation. The exception applies when the pace of litigation and the inherently transitory nature of the claims at issue conspire to make that requirement difficult to fulfill. See *Sosna*, 419 U. S., at 402, n. 11 (anticipating the *Gerstein* rule as an exception); *Gerstein*, 420 U. S., at 110–111, n. 11 (describing its holding as "a suitable exception" to *Sosna*). We have repeatedly tied *Gerstein*'s rule to the class action setting from which it emerged. See, *e.g., Genesis HealthCare*, 569 U. S., at 71, n. 2 (describing *Gerstein*'s rule as "developed in the context of class actions under Rule 23 to address the circumstance in which a named plaintiff's claim becomes moot prior to certification of the class"); *United States Parole Comm'n* v. *Geraghty*, 445 U. S. 388, 397–399 (1980) (highlighting *Gerstein* as an example of the Court "consider[ing] the application of the 'personal stake' requirement in the class-action context").

In concluding that *Gerstein* reaches further, the Court of Appeals looked to our recent decision in *Genesis HealthCare Corp.* v. *Symczyk*. But in that case the Court refused to extend *Gerstein* beyond the class action context, even with respect to a procedural device bearing many features similar to a class action. *Genesis HealthCare* addressed whether a "collective action" brought under the Fair Labor Standards Act (FLSA) by a plaintiff on behalf of herself "and other 'similarly situated' employees" remained "justiciable when the lone plaintiff's individual claim bec[ame] moot." 569 U. S., at 69. In an effort to continue her case on behalf of others, the plaintiff turned to *Sosna* and its progeny, including *Gerstein*. But those cases, we explained, were "inapposite," not least because "Rule 23 actions are fundamentally different from collective actions under the FLSA." *Genesis HealthCare*, 569 U. S., at 74. Such collective actions, we stressed, do not "produce a class with an independent legal status, or join additional parties to the action." *Id.,* at 75.

This case, which does not involve *any* formal mechanism

for aggregating claims, is even further removed from Rule 23 and *Gerstein.* The Federal Rules of Criminal Procedure establish for criminal cases no vehicle comparable to the FLSA collective action, much less the class action. And we have never permitted criminal defendants to band together to seek prospective relief in their individual criminal cases on behalf of a class. As we said when declining to apply nonparty preclusion outside the formal class action context, courts may not "recognize . . . a common-law kind of class action" or "create *de facto* class actions at will." *Taylor* v. *Sturgell*, 553 U. S. 880, 901 (2008) (alterations omitted); see *Smith* v. *Bayer Corp.*, 564 U. S. 299, 315–316 (2011) (same); *Pasadena City Bd. of Ed.* v. *Spangler*, 427 U. S. 424, 430 (1976) (rejecting in mootness context the idea that "the failure to obtain the class certification required under Rule 23 is merely the absence of a meaningless 'verbal recital'").

The court below designated respondents' case a "functional class action" because respondents were pursuing relief "not merely for themselves, but for all in-custody defendants in the district." 859 F. 3d, at 655, 657–658. But as explained in *Genesis HealthCare*, the "mere presence of . . . allegations" that might, if resolved in respondents' favor, benefit other similarly situated individuals cannot "save [respondents'] suit from mootness once the[ir] individual claim[s]" have dissipated. 569 U. S., at 73.

Our conclusion is unaffected by the decision of the court below to recast respondents' appeals as petitions for "supervisory mandamus." See 859 F. 3d, at 659 (viewing such a petition, like the civil class action, as a procedural vehicle to which the *Gerstein* rule applies). Supervisory mandamus refers to the authority of the Courts of Appeals to exercise "supervisory control of the District Courts" through their "discretionary power to issue writs of mandamus." *La Buy* v. *Howes Leather Co.*, 352 U. S. 249, 259–

260 (1957). There is no sign in our scant supervisory mandamus precedents that such cases are exempt from the normal mootness rules. See generally *Will* v. *United States*, 389 U. S. 90 (1967); *Schlagenhauf* v. *Holder*, 379 U. S. 104 (1964); *La Buy*, 352 U. S. 249. Indeed, as the court below acknowledged, "[s]upervisory mandamus cases require live controversies." 859 F. 3d, at 657.

## B

Respondents do not defend the reasoning of the Court of Appeals. See Brief for Respondents 58 (arguing that this Court need not reach the functional class action issue and should "discard[]" that label); Tr. of Oral Arg. 43 (respondents' counsel agreeing that they "have not made any effort to defend" the functional class action approach). In respondents' view, functional class actions and *Gerstein*'s rule are beside the point because two respondents— Sanchez-Gomez and Patricio-Guzman—retain a personal stake in the outcome of their appeals.

Sanchez-Gomez and Patricio-Guzman are no longer in pretrial custody. Their criminal cases, arising from their illegal entry into the United States, ended in guilty pleas well before the Court of Appeals issued its decision. Respondents contend, however, that the claims brought by Sanchez-Gomez and Patricio-Guzman fall within the "exception to the mootness doctrine for a controversy that is capable of repetition, yet evading review." *Kingdomware Technologies, Inc.* v. *United States*, 579 U. S. ___, ___ (2016) (slip op., at 7) (internal quotation marks omitted). A dispute qualifies for that exception only "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Turner* v. *Rogers*, 564 U. S. 431, 439–440 (2011) (alterations and internal quotation marks omitted). The parties do not

contest that the claims at issue satisfy the first prong of that test, but they sharply disagree as to the second.

Respondents argue that Sanchez-Gomez and Patricio-Guzman meet the second prong because they will again violate the law, be apprehended, and be returned to pre-trial custody. But we have consistently refused to "conclude that the case-or-controversy requirement is satisfied by" the possibility that a party "will be prosecuted for violating valid criminal laws." *O'Shea* v. *Littleton*, 414 U. S. 488, 497 (1974). We have instead "assume[d] that [litigants] will conduct their activities within the law and so avoid prosecution and conviction as well as exposure to the challenged course of conduct." *Ibid.*; see, *e.g., Spencer* v. *Kemna*, 523 U. S. 1, 15 (1998) (reasoning that a claim regarding a parole revocation order was moot following release from custody because any continuing consequences of the order were "contingent upon [the claimant] violating the law, getting caught, and being convicted"); *Honig* v. *Doe*, 484 U. S. 305, 320 (1988) ("[W]e generally have been unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk of that injury."); *Lane* v. *Williams*, 455 U. S. 624, 632–633, n. 13 (1982) (concluding that case was moot where the challenged parole revocation could not "affect a subsequent parole determination unless respondents again violate state law, are returned to prison, and become eligible for parole").

Respondents argue that this usual refusal to assume future criminal conduct is unwarranted here given the particular circumstances of Sanchez-Gomez's and Patricio-Guzman's offenses. They cite two civil cases—*Honig* v. *Doe* and *Turner* v. *Rogers*—in which this Court concluded that the expectation that a litigant would repeat the misconduct that gave rise to his claims rendered those claims capable of repetition. Neither case, however, supports a departure from the settled rule.

*Honig* involved a disabled student's challenge to his suspension from school for disruptive behavior. We found that given his "inability to conform his conduct to socially acceptable norms" or "govern his aggressive, impulsive behavior," it was "reasonable to expect that [the student would] again engage in the type of misconduct that precipitated this suit" and "be subjected to the same unilateral school action for which he initially sought relief." 484 U. S., at 320–321. In *Turner*, we determined that an indigent person repeatedly held in civil contempt for failing to make child support payments, who was at the time over $13,000 in arrears, and whose next hearing was only five months away, was destined to find himself in civil contempt proceedings again. The challenged denial of appointed counsel at his contempt hearing was thus capable of repetition. See 564 U. S., at 440.

Respondents contend that Sanchez-Gomez and Patricio-Guzman, like the challengers in *Honig* and *Turner*, are likely to find themselves right back where they started if we dismiss their case as moot. Respondents cite a Sentencing Commission report finding that in 2013 thirty-eight percent of those convicted and sentenced for an illegal entry or illegal reentry offense "were deported and subsequently illegally reentered at least one time." United States Sentencing Commission, Illegal Reentry Offenses 15 (2015) (cited by Brief for Respondents 51). Respondents emphasize the economic and familial pressures that often compel individuals such as Sanchez-Gomez and Patricio-Guzman to repeatedly attempt to enter the United States. And respondents note that both men, after their release, actually *did* cross the border into the United States, were apprehended again, and were charged with new illegal entry offenses. All this, respondents say, adds up to a sufficient showing that Sanchez-Gomez and Patricio-Guzman satisfy the "capable of repetition" requirement. Because the Court of Appeals was not aware that

Sanchez-Gomez and Patricio-Guzman had subsequently reentered the United States illegally, respondents invite us to remand this case for further proceedings.

We decline to do so because *Honig* and *Turner* are inapposite. Our decisions in those civil cases rested on the litigants' inability, for reasons beyond their control, to prevent themselves from transgressing and avoid recurrence of the challenged conduct. In *Honig*, such incapacity was the very reason the school sought to expel the student. And in *Turner*, the indigent individual's large outstanding debt made him effectively incapable of satisfying his imminent support obligations. Sanchez-Gomez and Patricio-Guzman, in contrast, are "able—and indeed required by law"—to refrain from further criminal conduct. *Lane*, 455 U. S., at 633, n. 13. Their personal incentives to return to the United States, plus the elevated rate of recidivism associated with illegal entry offenses, do not amount to an inability to obey the law. We have consistently refused to find the case or controversy requirement satisfied where, as here, the litigants simply "anticipate violating lawful criminal statutes." *O'Shea*, 414 U. S., at 496.

### III

None of this is to say that those who wish to challenge the use of full physical restraints in the Southern District lack any avenue for relief. In the course of this litigation the parties have touched upon several possible options. See, *e.g.,* Tr. of Oral Arg. 12 (indicating circumstances under which detainees could bring a civil suit). Because we hold this case moot, we take no position on the question.

\*    \*    \*

We vacate the judgment of the Court of Appeals for the Ninth Circuit and remand the case to that court with instructions to dismiss as moot.

*It is so ordered.*