# United States Court of Appeals
## For the First Circuit

Nos. 17-1311, 17-1817

J.S., individually and as parent and legal guardian of M.S., a minor; T.S., individually and as parent and legal guardian of M.S., a minor,

Plaintiffs, Appellees,

v.

THE WESTERLY SCHOOL DISTRICT; THE WESTERLY PUBLIC SCHOOLS,

Defendants, Appellants,

THE STATE OF RHODE ISLAND DEPARTMENT OF EDUCATION,

Defendant.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

[Hon. John J. McConnell, Jr., U.S. District Judge]

Before

Howard, Chief Judge,
Torruella and Kayatta, Circuit Judges.

Mary Ann Carroll, with whom Henneous Carroll Lombardo LLC was on brief, for appellants.
Gregory A. Mancini, with whom Sinapi Law Associates, Ltd. was on brief, for appellee.

December 6, 2018

**KAYATTA**, **Circuit Judge**. M.S. is a student who until recently was enrolled in the Westerly School District in Westerly, Rhode Island. M.S. suffers from Lyme Disease and other tick-borne illnesses, and she receives educational accommodations pursuant to Section 504 of the Rehabilitation Act of 1973. For over two years, her parents J.S. and T.S. unsuccessfully sought to have Westerly determine that M.S. was also eligible for an Individualized Education Program (IEP) under the Individuals with Disabilities Education Act (IDEA). M.S. and her parents have since moved out of the Westerly District, thereby mooting the dispute over M.S.'s entitlement to an IEP. In the course of the parties' dispute, however, the parents obtained an order from the district court forcing Westerly to forego conducting its own evaluations and decide "post-haste" if M.S. was eligible for an IEP. Although that decision resulted in a determination that M.S. was not eligible, the district court subsequently awarded the parents attorneys' fees as the prevailing parties. Westerly now appeals both the district court's order compelling it to determine eligibility without first obtaining its own evaluations and the fee award. For the following reasons, we find the challenge to the order moot and the attorneys' fee award mistaken.

We begin with a basic description of the IDEA's framework for determining a student's eligibility for an IEP and the procedure for adjudicating a dispute over eligibility. The purposes of the IDEA include "ensur[ing] that all children with disabilities have available to them a free appropriate public education" and "ensur[ing] that the rights of children with disabilities and parents of such children are protected." 20 U.S.C. § 1400(d)(1)(A)-(B). To these ends, the IDEA offers federal funds to states that provide a free appropriate public education (FAPE) to children with disabilities. See generally id. §§ 1411–1412. Rhode Island accepted IDEA funding and agreed to provide FAPE to disabled children. See 21-2-54:A R.I. Code R. § 300.2(a).

Under the IDEA and its implementing regulations, parents may request an initial evaluation "to determine if the[ir] child is a child with a disability." 20 U.S.C. § 1414(a)(1)(B). Upon receipt of such a request, the local educational agency (LEA) "must conduct a full and individual initial evaluation . . . before the initial provision of special education and related services to a child with a disability." 34 C.F.R. § 300.301(a). As part of this initial review, a team of professionals must "[r]eview existing evaluation data on the child, including . . . [e]valuations and information provided by the parents of the

- 3 -

child." Id. § 300.305(a); see also id. § 300.502(c) ("If the parent . . . shares with the public agency an evaluation obtained at private expense, the results of the evaluation . . . [m]ust be considered by the public agency, if it meets agency criteria, in any decision made with respect to the provision of FAPE to the child."). After reviewing any existing data, the LEA must "identify what additional data, if any, are needed to determine . . . [w]hether the child is a child with a disability . . . [and the LEA] must administer such assessments and other evaluation measures as may be needed to produce the data identified." Id. § 300.305(a),(c). Only then, "[u]pon completion of the administration of assessments and other evaluation measures," do a group of professionals and the parents of the child meet to determine whether the student is a child with a disability under the IDEA and the educational needs of the child. Id. at § 300.306(a). So, in sum, before making an IDEA eligibility determination, the LEA must (1) review existing data, including evaluations provided by the parents; (2) identify what additional data are needed to determine whether the child is eligible; and (3) administer evaluations to collect that additional data.

When the LEA decides that it needs additional data, the LEA must obtain parental consent before conducting its own evaluations of the child. See id. § 300.300(a)(1)(i) ("The public agency proposing to conduct an initial evaluation to determine if

a child qualifies as a child with a disability under § 300.8 must, after providing notice . . . obtain informed consent . . . from the parent of the child before conducting the evaluation."). If the parents refuse to consent, the school can -- but is not required to -- pursue the evaluation through mediation or administrative procedures. See id. § 300.300(a)(3)(i). But "the public agency does not violate its obligation [to determine eligibility] if it declines to pursue the evaluation." Id. § 300.300(a)(3)(ii).

Parents who contest the identification, evaluation, or educational placement of a child with a disability can file a "due process complaint," which kicks off a state administrative process for adjudicating the dispute. See id. § 300.507(a). Any party aggrieved by the findings or decisions made in the administrative proceeding has a right to bring a civil action in a United States District Court. See id. § 300.516(a).

**B.**

We now sketch the relevant facts of this case. In the fall of 2015, J.S. and T.S. ("the parents") requested that Westerly determine that M.S. was eligible for special educational services under the IDEA. The school and the parents agreed to a meeting to be held on December 17, 2015. The parties had different expectations about the meeting. In a December 9 form sent to the parents, the school indicated that the purpose of the meeting was

to "address a referral to the Evaluation Team." The parents replied that they expected the meeting to include not only a referral discussion, but also an eligibility determination, as there was "enough objective information for the team to consider and make a decision."

At the meeting, the parents brought with them two educational advocates and a neuropsychologist. M.S.'s personal physician and her audiologist phoned in. The medical professionals presented the results of their evaluations of M.S. and their recommendations for special educational services, and the parents provided the school with copies of the evaluations. Soon after the meeting, school officials wrote to the parents that, after considering the independent evaluators' opinions, "there remained significant questions," in part because "the results of the evaluations conducted [by the parents' experts] did not in many ways reflect what school staff who know [M.S.] have or are experiencing with her." Consistent with its obligations under the IDEA, Westerly undertook to "conduct evaluations to answer these questions and assist with the eligibility determination." Westerly therefore requested the parents' consent to conduct five educational evaluations and observation by the school social worker.

Rather than consent to the school's proposed evaluations, the parents filed a due process complaint with the

Rhode Island Department of Education in February 2016, alleging that Westerly failed to identify M.S. as a child with a disability who was entitled to special educational services. In April 2016, the administrative hearing officer assigned to the case relied on the regulations discussed above to conclude that the district had a right to conduct its own evaluations before making an eligibility determination. The hearing officer consequently ordered the parents to "execute all releases necessary for school department to conduct appropriate evaluations of M.S." The parents did not provide consent, and in August 2016, the hearing officer dismissed the due process complaint based on the parents' failure to comply with its order. The parents appealed to the District Court of Rhode Island.

Following a March 17, 2017 hearing on cross motions for summary judgment, the district court eventually commanded Westerly to determine M.S.'s eligibility based on the existing information (without first conducting its own evaluations). While appealing, Westerly also complied with the district court's order by making an eligibility determination. M.S.'s teachers participated and described M.S.'s above-average academic performance. Unsurprisingly, Westerly's conclusion tracked what it told the parents when requesting the further evaluations that the parents had refused to permit: The evaluations provided by the parents were inconsistent with M.S.'s performance in the classroom.

Therefore, Westerly concluded that M.S. was ineligible for special educational services.  The family then moved out of the school district before any tribunal took any further action on the merits of the case.

In spite of the outcome of the eligibility determination, the district court subsequently found that the parents were "prevailing parties" under the IDEA, and granted their motion for $53,290.50 in attorneys' fees.  Westerly appealed the attorneys' fees order to this court.  We consolidated that appeal with Westerly's prior appeal.

## II.

## A.

Before assessing the district court's order that Westerly make an eligibility determination without first conducting its own evaluations, we must ask whether this issue remains justiciable.  "A case that becomes moot at any point during the proceedings is 'no longer a "Case" or "Controversy" for purposes of Article III,' and is outside the jurisdiction of the federal courts."  United States v. Sanchez-Gomez, 138 S. Ct. 1532, 1537 (2018) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)).  We have consistently held that a case becomes moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  Weaver's Cove Energy, LLC v. R.I. Coastal Res. Mgmt. Council, 589 F.3d 458, 468 (1st

Cir. 2009) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). A party lacks a legally cognizable interest in the outcome of a case if we are "not capable of providing any relief which will redress the alleged injury." Gulf of Me. Fisherman's All. v. Daley, 292 F.3d 84, 88 (1st Cir. 2002).

Westerly appeals the order requiring it to make an eligibility determination without the benefit of its own evaluations. A favorable ruling from this court could provide no relief from that order because the eligibility determination already took place. Moreover, if there was any doubt that this issue is moot, such doubt disappeared at oral argument when we learned that M.S. no longer lives in the Westerly School District. We therefore lack the power to review the district court's order that Westerly determine M.S.'s eligibility without first conducting its own evaluations.

**B.**

Barred from ruling on Westerly's appeal on the merits of the case, we turn now to the dispute over attorneys' fees. The IDEA permits a court to award reasonable attorneys' fees to the prevailing party who is a parent of a child with a disability. See 20 U.S.C. § 1415(i)(3)(B)(i) ("In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability.");

34 C.F.R. § 300.517(a)(1)(i). We review de novo whether a party achieved a victory that rendered it "prevailing" for purposes of the IDEA's fee-shifting provision. See Smith v. Fitchburg Pub. Sch., 401 F.3d 16, 21 (1st Cir. 2005).

We note at the outset that, although the substantive question underlying the fee award is moot for the reasons discussed above, the fee-shifting issue is not. "When plaintiffs clearly succeeded in obtaining the relief sought before the district court and an intervening event rendered the case moot on appeal, plaintiffs are still 'prevailing parties' for the purposes of attorney's fees for the district court litigation." Diffenderfer v. Gomez-Colon, 587 F.3d 445, 454 (1st Cir. 2009); see also id. at 453 ("[I]n the mootness context, a 'prevailing party' is a party who managed to obtain a favorable, material alteration in the legal relationship between the parties prior to the intervening act of mootness."). The controversy over the fees incurred before the district court is therefore still live.

Westerly urges us to reverse the attorneys' fee award because the ruling underlying it was based upon an erroneous interpretation of the IDEA. It is true that, ordinarily, when the decision underlying a fee award is reversed, the formerly prevailing party is no longer entitled to attorneys' fees. See, e.g., Globe Newspaper Co. v. Beacon Hill Architectural Comm'n, 100 F.3d 175, 195 (1st Cir. 1996). However, when the predicate issue

is moot, we cannot recoup jurisdiction over the merits by ruling on a question about attorneys' fees.  See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 480 (1990) ("Th[e] interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."); Ford v. Bender, 768 F.3d 15, 30 n.11 (1st Cir. 2014) (noting "the wide agreement by appellate judges that they should not undertake to delve into the details of a district court's resolution of a controversy that has since become moot in order to decide the ancillary question of fees" (quoting Ctr. for Biological Diversity v. Marina Point Dev. Co., 566 F.3d 794, 805-06 (9th Cir. 2008))); Diffenderfer, 587 F.3d at 452 ("[A] party's interest in recouping attorney's fees does not create a stake in the outcome sufficient to resuscitate an otherwise moot controversy."). Therefore, in asking whether the parents prevailed, we look "only to what relief the district court granted and not to whether the case was rightly decided."  Diffenderfer, 587 F.3d at 453.  In other words, we must turn a blind eye to the merits of the district court's reading of the IDEA, and ask only whether the district court's order rendered the parents "prevailing parties."

To be a "prevailing party" under a federal fee-shifting statute, a litigant must show both a "material alteration of the legal relationship of the parties" and a "judicial imprimatur on the change."  Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of

Health & Human Res., 532 U.S. 598, 604, 605 (2001).[1]  "The party's success cannot be a hollow victory; it must materially alter the litigants' legal relationship by modifying one party's behavior in a way that directly benefits the other."  Mr. R., 321 F.3d at 14. In other words, the success must "achieve[] some of the benefit the parties sought in bringing suit."  Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).  To decide whether a party prevailed, therefore, we "make a qualitative inquiry into the import of the result obtained," Mr. R., 321 F.3d at 15, comparing the results achieved with the reasons for bringing suit.

With that standard in mind, we consider what benefits the parents sought in bringing suit.  In the due process complaint, the parents requested that the hearing officer "[c]onclude forthwith that M.S. is eligible for an Individual Education Plan and protections under the Individual [sic] with Disabilities in Education Act as a child with a disability requiring specialized instruction and related services."  Similarly, in their complaint to the district court -- setting aside the prayers for fees and

---

[1] We generally interpret the term of art "prevailing party" consistently across the federal fee-shifting statutes that use that phrase.  See Me. Sch. Admin. Dist. No. 35 v. Mr. R., 321 F.3d 9, 14 (1st Cir. 2003).

general prayers for unspecified relief[2] -- the parents sought the following relief:

- "Preliminary and permanent injunctions directing Defendant to designate that the Defendant's actions denied the Student a free appropriate education under 20 U.S.C. § 1400 et seq."

- A declaration "[t]hat the child is a child with an educational disability eligible for specialized instruction under 20 U.S.C. § 1400 et seq."

- "Remand to Defendant in order to develop an Individual Education Plan based on the evaluations completed to date; or alternatively, require WPS to an [sic] convene an IEP team meeting to design an appropriate IEP for the student based on the evaluations submitted by Plaintiffs."

- "A determination that Defendant's denial of the Plaintiffs' procedural due process rights were not substantially justified in law and had no reasonable basis in law or in fact."

The district court's order garnered none of this relief. What it did, instead, was to grant a request that the parents raised for the first time in their summary judgment briefing for "an expedited hearing on the merits [of their request for an IEP]

---

[2] In addition to their case-specific prayers for relief, the parents prayed for "[a]n award of any other damages or relief available under applicable law" and "[s]uch other and further relief as this Court deems just and proper."

- 13 -

that will be based on the current available evidence." So, we ask whether this grant was a victory in the context of "the benefit [the parents] sought in bringing suit." Hensley, 461 U.S. at 433. We think not. The school administrators had already made clear that the available information left them unconvinced that M.S.'s condition warranted an IEP. They were nevertheless willing to gather more information, which may have cut either way. Obtaining an order forcing a decision without additional information was no more than a Pyrrhic procedural victory that did not advance, and may well have undercut, the goal of obtaining any success at all on the merits of the parents' claims.[3]

## III.

For the reasons above, we dismiss as moot the challenge to the district court's order compelling Westerly to determine M.S.'s eligibility without first obtaining its own evaluations, and we reverse the district court's award of attorneys' fees. The parties shall bear their own costs.

---

[3] There is no dispute that the school's proposed evaluations were relevant to the question of whether M.S. was eligible for an IEP. We take no position on whether a parent or guardian may successfully avoid plainly irrelevant evaluations, and if so, whether such parties might be considered "prevailing" under the IDEA's fee-shifting provision.

- 14 -