[Cite as *State ex rel. Right to Life Action Coalition of Ohio v. Capital Care of Toledo, L.L.C.*, 2024-Ohio-609.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State ex rel. Right to Life Action
Coalition of Ohio, et al.

        Appellants

v.

Capital Care of Toledo, LLC, et al.

        Appellees

Court of Appeals No.  L-23-1093

Trial Court No.  CI0202101942


**<u>DECISION AND JUDGMENT</u>**

Decided: February 16, 2024

* * * * *

Eugene F. Canestraro, for appellants.

Peter Pattakos, B. Jessie Hill, and Freda J. Levenson, for appellees.

* * * * *

**OSOWIK, J.**

{¶ 1} Appellants, Right to Life Action Coalition of Ohio, Greater Toledo Area Right to Life, and Jeffrey Barefoot (collectively, "Right to Life"), appeal from the judgment of the Lucas County Court of Common Pleas dismissing their action against appellees, Capital Care of Toledo, LLC, D/B/A Capital Care of Toledo ("Capital Care"),

and Amelia Stower, on grounds of mootness. For the reasons that follow, the trial court's judgment is affirmed.

## Statement of the Case and the Facts

{¶ 2} On March 3, 2021, Right to Life filed a complaint in Wood County, Ohio, against Capital Care, which operated a women's health clinic located at 1160 W. Sylvania Avenue, Toledo, Lucas County, Ohio, and Amelia Stower, who was the clinic's owner. The complaint alleged that because neither Capital Care nor Stower held a medical license, neither was permitted by Ohio law to advertise the provision of abortion-related services by the clinic's non-owner physician, and that, in doing so, appellees were practicing medicine without a license and were engaged in the unauthorized practice of medicine. Right to Life sought an injunction to prevent Capital Care from advertising or soliciting prospective patients and from providing medical abortions or related services. Also included in the pleading was a request for declaratory relief.

{¶ 3} Appellees filed a motion to transfer venue to Lucas County, and on April 23, 2021, the trial court granted the motion.

{¶ 4} Following the transfer to Lucas County, appellees filed a motion to dismiss. On August 31, 2021, the trial court granted the motion, finding that appellants lacked standing under R.C. 4731.341(B), because they failed to satisfy a 30-day notice requirement that is set forth in the statute. Appellants appealed to this court, and we

2.

reversed the trial court's decision based on our determination that the 30-day notice requirement is not, in fact, a requirement for standing.

{¶ 5} On remand, appellants filed an amended complaint. On December 2, 2022, appellees moved to dismiss the complaint on grounds that the complaint had become moot because appellees no longer operated or owned a women's health clinic. Attached to the motion was an affidavit by Stower, wherein she testified: "As of January of 2022, Capital Care of Toledo has not operated or existed, and since then I have not been and currently am not the owner or manager of Capital Care or any women's health clinic."

{¶ 6} In a judgment entry and opinion dated March 23, 2023, the trial court granted the motion to dismiss on mootness grounds, finding that that there was no longer a live case or controversy and that appellants had failed to demonstrate that appellees' actions fell under the exception for controversies that are "capable of repletion yet evading review." The court explained:

> The state of Ohio records indicate, as do the Plaintiffs, that Capital Care of Toledo is not in operation at 1160 W. Sylvania Ave. and that Amelia Stower is not listed as the operator of the new entity, rather Dr. David Burkons, M.D. is the listed operator. Plaintiffs have also conceded that Defendant Capital Care of Toledo has removed its website. Amelia Stower, through affidavit, also averred that as of January of 2022, Capital Care of Toledo has not operated or existed and she has not been and is currently not the owner or manager of Capital Care or any other women's health care clinics.

{¶ 7} It is from this judgment entry that appellants presently appeal.

3.

## Assignments of Error

{¶ 8} Appellants assert the following assignments of error on appeal:

I. The Trial Court ignored the plain language of the enabling statute {R.C. 4731.341} regarding Plaintiff's/Appellant's KNOWLEDGE of the then Existing Activity as the key elements necessary for JURISDICTION. In other words, 'Mootness' is barred once these two requirements are met, and Defendants cannot manufacture their own mootness. As such, the trial court erred in dismissing the action.

II. As within the first Appeal ['Capital Care #1, Appellate Case #21-1177] this Sixth District Court of Appeals, recognized within its unanimous Decision concerning 'standing' that the [Ohio] legislative intent and the unambiguous language of the statute would control. It should do so again and correct the trial court's misapplication of the "Mootness Doctrine" ruling the unambiguous statutory language creates Jurisdiction regardless of Defendant's/Appellee's post complaint cessation of the improper or illegal activity […offending parties cannot create its own 'mootness' and thwart jurisdiction…].

III. Even IF the timeliness requirement of 4731.34 was not the controlling issue and the case was moot for voluntary cessation, the exception for "great public interest" could not be more evident and is controlling. The Ohio Legislature believes cases involving the 'unlicensed practice of medicine' are of such extraordinary interest that they created an enabling statute for private persons to bring the action Ex Rel. As such, the trial court erred in dismissing the action.

## Analysis

{¶ 9} Appellants' first and second assignments of error set forth overlapping arguments relating to mootness and the applicability of the mootness doctrine to the facts of this case. As such, they will be considered together in this analysis.

### Appellants' complaint was properly dismissed as moot.

{¶ 10} "Under the mootness doctrine, American courts will not decide cases in which there is no longer an actual legal controversy between the parties." *Cyran v. Cyran*, 152 Ohio St.3d 484, 2018-Ohio-24, 97 N.E.3d 487, ¶ 9, citing *In re A.G.,* 139 Ohio St.3d 572, 2014-Ohio-2597, 13 N.E.3d 1146, ¶ 37. "If the controversy has come and gone, then [the] court must dismiss the case as moot." *M.R. v. Niesen*, 167 Ohio St.3d 404, 2022-Ohio-1130, 193 N.E.3d 548, ¶ 7.

5.

{¶ 11} "Subject-matter jurisdiction is the power of a court to entertain and adjudicate a particular class of cases." *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 19, citing *Morrison v. Steiner*, 32 Ohio St.2d 86, 87, 290 N.E.2d 841 (1972). "Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions.'" *Napier v. Ickes*, 2019-Ohio-2774, 140 N.E.3d 137, ¶ 85 (9th Dist.), quoting *State v. Feister*, 5th Dist. Tuscarawas No. 2018 AP 01 0005, 2018-Ohio-2336, ¶ 18, quoting *United States v. Alaska S.S. Co.*, 253 U.S. 113, 116, 40 S.Ct. 448, 64 L.Ed. 808 (1920); *see also* Ohio Constitution, Article IV, Section 1 (limiting courts' authority to the "judicial power"); Ohio Constitution, Article IV, Section 4(B) (courts of common pleas "shall have such original jurisdiction over all justiciable matters * * * as may be provided by law"). "Courts of common pleas' jurisdiction is limited to 'justiciable matters.' * * * 'If what were once justiciable matters have been resolved to the point where they become moot, the courts of common pleas no longer have subject matter jurisdiction to hear the case.'" *Graham v. City of Lakewood*, 2018-Ohio-1850, 113 N.E.3d 44, ¶ 23 (8th Dist.), quoting *Hirsch v. TRW, Inc.,* 8th Dist. Cuyahoga No. 83204, 2004-Ohio-1125, ¶ 11; *Park Lane Apts. v. Parks*, 6th Dist. Lucas No. L-20-1208, 2021-Ohio-3510, ¶ 2 ("[m]ootness is an issue of subject-matter jurisdiction"). "[A] declaratory judgment action must, like any action, satisfy a threshold requirement of justiciability." *Waldman v. Pitcher*, 2016-Ohio-5909, 70 N.E.3d 1025, ¶ 20 (1st Dist.). "Dismissals on the basis of mootness present

6.

questions of law, which we review de novo." *Heartland of Portsmouth, Ohio, LLC v. McHugh Fuller Law Group, PLLC*, 2017-Ohio-666, 85 N.E.3d 191, ¶ 15 (4th Dist.).

**{¶ 12}** In this case -- in which appellants seek only declaratory and injunctive relief related to appellees operation of the Capital Care clinic -- we find that because Capital Care ceased its operation and existence at 1160 W. Sylvania Avenue, and because Stower is no longer the owner or manager of Capital Care or any other women's health clinic, there has been a change in circumstances such that no actual legal controversy exists between the parties.

**{¶ 13}** On appeal, appellants argue that the trial court erred in dismissing the case as moot, because Capital Care and Stower voluntarily ceased the allegedly wrongful conduct and did not demonstrate that such conduct could not reasonably be expected to recur. *See Knox v. Service Employees Intern. Union, Local 1000*, 567 U.S. 298, 307, 132 S.Ct. 2277, 183 L.Ed.2d 281 (2012) ("The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.").

**{¶ 14}** Although we agree that Capital Care and Stower voluntarily ceased the allegedly wrongful behavior, we disagree that they failed to demonstrate that such conduct could not reasonably be expected to recur. Trial court hearing testimony by Stower indicates that she relinquished ownership of the clinic, not in response to the lawsuit, but rather so that she could go back to school and "have a life again." *See Hoerig*

7.

*v. Bowling Green State University,* 2023-Ohio-3189, 224 N.E.3d 567, ¶ 16-17 (6th Dist.) (where rescission of mask mandate policy was found to be for reasons other than in response to lawsuit, defendant was found to have demonstrated that the allegedly wrongful behavior could not reasonably be expected to recur).

{¶ 15} Appellants argue, however, that Stower continues to work for the Toledo Women's Center, which is the new entity operating in the old Capital Care location. Describing her position, Stower acknowledges that although she is no longer the "owner" of the business, she is "still an integral part of it as front desk receptionist and management." Appellants suggest that Stower's current employment at the clinic constitutes "highly relevant evidence which impacts * * * the not-remote possibility that Stower is in a position as an integral part of the management team to still be unlawfully practicing medicine." That a "possibility" exists that Stower could resume ownership and operation of the clinic is distinguishable from a reasonable likelihood that it will. An employee does not "operate" a business in the sense that an owner does, and it is as an owner that Stower was named in the complaint. The mere fact that Stower is an employee does not give rise to any particular likelihood that she will resume ownership and operation of the clinic.

{¶ 16} In a further attempt to establish that Stower will "repeat her operations", appellants assert the existence of an "affiliated" Columbus business, operating under the name "Your Choice Healthcare." Specifically, appellants point to advertising materials

8.

that promote medical abortion services by both the Capital Care facility located at 1160 W. Sylvania Avenue and the Your Choice Healthcare facility, which is located at 6721 Karl Road, in Columbus, Ohio. Absent from appellants' showing, however, is any connection between Stower and Your Choice Healthcare. Also lacking is evidence that Your Choice Healthcare has ownership issues such as those complained of by appellants -- let alone any that are ascribable, or otherwise related, to Capital Care. Without more, mere proof of the existence of the "affiliated" Columbus business by way of advertising materials does nothing to bolster appellants' argument that appellees are imminently prepared to provide abortion services.

{¶ 17} Finally, appellants claim they were prejudiced by the trial court's mistaken claim --- made at one point in the March 23, 2023 opinion -- that Stower, through her affidavit, had stated that "she is not, nor will be operating a women's health care clinic." Appellants correctly point out that nowhere in the affidavit did Stower assert that she would not operate a women's health care clinic in the future. Although an error, the trial court's mistaken claim does nothing to alter our analysis herein.

{¶ 18} For the foregoing reasons, we do not find that the trial court erred in dismissing the case as moot.

**The exception to the mootness doctrine for issues that are capable of repetition yet evading review does not apply in this case.**

{¶ 19} An exception to the mootness doctrine applies for issues that are capable of repetition yet evading review. *Niesen* at ¶ 11. "An issue is capable of repetition yet

9.

evading review if "'(1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'" *Id.*, quoting *United States v. Sanchez-Gomez*, 584 U.S. 381, 391, 138 S.Ct. 1532, 200 L.Ed.2d 792 (2018). (Additional quotations omitted.) "It is not enough for an issue to be capable of repetition by *some* parties; the issue must be capable of repetition between the 'same' parties." *Id.* at ¶ 12 (Emphasis in original.). Our previous analysis and determination as to whether appellees' allegedly wrongful behavior could reasonably be expected to recur applies equally to the current analysis. In short, it could not. As part of the current analysis, we add our specific determination that even if the issues were capable of repetition by some parties, because Capital Care is no longer in existence, there is no reasonable expectation of repeated actions between *all* of the parties. *See Niesen* at ¶ 12 (for the exception to apply, there must have been a reasonable expectation of repeated actions between petitioner Olthaus and respondent Niesen and respondent White). Accordingly, we find that the exception to the mootness doctrine for issues that are capable of repetition yet evading review is inapplicable to this case.

### R.C. 4731.341 and R.C 2721 neither void the mootness doctrine nor obviate the constitutional jurisdictional requirement of an actual justiciable controversy.

{¶ 20} Appellants next argue that *there can be no mootness* when it comes to R.C. 4731.341, the operative statute under which they filed their complaint. R.C. 4731.341 provides in relevant part:

10.

(A) The practice of medicine in all of its branches or the treatment of human ailments without the use of drugs or medicines and without operative surgery by any person not at that time holding a valid and current license or certificate as provided by Chapter 4723., 4725., or 4731. of the Revised Code is hereby declared to be inimical to the public welfare and to constitute a public nuisance.

(B) The attorney general, the prosecuting attorney of any county in which the offense was committed or the offender resides, the state medical board, or any other person having knowledge of a person who either directly or by complicity is in violation of division (A) of this section, may * * * in accord with provisions of the Revised Code governing injunctions, maintain an action in the name of the state to enjoin any person from engaging either directly or by complicity in the unlawful activity by applying for an injunction in the Franklin county court of common pleas or any other court of competent jurisdiction.

* * *

Upon the filing of a verified petition in court, the court shall conduct a hearing on the petition and shall give the same preference to this proceeding as is given all proceedings under Chapter 119. of the Revised Code, irrespective of the position of the proceeding on the calendar of the court.

{¶ 21} In support of their claim that the language of R.C. 4731.341 creates jurisdiction that precludes mootness, appellants argue simply that R.C. 4731.341 "specifies that the KNOWLEDGEABLE PERSON shall be permitted to seek an ORDER from the court to prevent the nuisance – which the Ohio legislature has identified as inimical to public health, from occurring – both on the date of recognition **and** thereafter." (Emphasis in original.) Appellants further argue that the language of the statute creates jurisdiction "regardless of [appellees'] post complaint cessation of * * * improper or illegal activity."

{¶ 22} As indicated above, the Ohio Constitution clearly dictates that the subject matter jurisdiction of a common pleas court is limited to justiciable cases, which is to say, cases in which there is an actual legal controversy between adverse parties. As this case is no longer a justiciable case, our analysis is properly ended here, with the dismissal of appellants' complaint.

**{¶ 23}** Even in the absence of this overarching and dispositive constitutional hurdle, appellants' argument would still fail, based on the plain language of R.C. 4731.341(B). "In construing a statute, we begin with legislative intent." *State ex re. Right to Life Action Coalition of Ohio v. Capital Care of Toledo, LLC*, 6th Dist. Lucas No. L-21-1177, 2022-Ohio-3266, ¶27, citing *State ex rel. Clay v. Cuyahoga County Medical Examiner's Office*, 152 Ohio St.3d 163, 2017-Ohio-8714, 94 N.E.3d 498, ¶ 14. (Additional citation omitted.) "To discern this intent, we first look to the words the legislature used." *Id.*, citing *Clay* at ¶ 14. (Additional citation omitted.) "Where there is no ambiguity, we must abide by the words employed by the General Assembly, * * * and have no cause to apply the rules of statutory construction." *Clay* at ¶ 15, citing *State v. Waddell*, 71 Ohio St.3d 630, 631, 646 N.E.2d 821 (1985). (Additional citation omitted.). The Ohio general assembly, in the granting certain parties the ability to maintain an action under R.C. 4731.341(B), employs no language whatsoever that would suggest an intent to eliminate or override a subject matter jurisdiction analysis. Because nothing in the language cited by appellants "creates jurisdiction that precludes mootness," appellants' argument to the contrary is properly dismissed as meritless.

**{¶ 24}** Citing a separate paragraph of R.C. 4731.341(B), appellants next seek to persuade us that R.C. 4731.341 requires a trial court to proceed to a hearing *whenever* a complaint under the statute is received, regardless of mootness or any other jurisdictional

13.

defect. They say that "[s]o important is the filing that the litigation is (statutorily) placed in a preferential position upon the assigned Court's docket and a mandatory hearing is plainly identified." Elsewhere, appellants claim that a plain reading of R.C. 4731(B) "*requires* the Trial Court, upon the filing of a well-pled Verified Complaint, to conduct a swift hearing, giving preference to this proceeding as is given to all proceedings under R.C. 119." (Emphasis in original.) In making these points, appellants claim that "the proper examination is of the *complaining party* not the party allegedly violating the law, which controls whether the action is rendered MOOT." (Emphasis in original.) According to appellants, only the timely filing of a complaint is necessary to establish jurisdiction.

{¶ 25} The asserted origin of this special status for the statute is the reference in the statute to R.C. 119, by which the court receiving a complaint under R.C. 4731.341 "shall give the same preference to this proceeding as is given all proceedings under Chapter 119. of the Revised Code, irrespective of the proceeding on the calendar of the court." *See* R.C. 4731.341(B).

{¶ 26} R.C. 119.12(M) merely provides that a court shall conduct a hearing * * * and shall give preference to all proceedings under sections 119.01 to119.13 of the Revised Code, over all other civil cases, irrespective of the position of the proceedings on the calendar of the court."

**{¶ 27}** Once again, even in the absence of the dispositive constitutional hurdle of subject matter jurisdiction, appellants' argument would nevertheless fail, as the language of the statutes simply do not support appellants' claim that R.C. 4731.341, empowered by R.C. 119, requires a hearing, no matter what.

**{¶ 28}** In this case, a plain reading of the statutes does not indicate any attempt on the part of the legislature to abrogate the mootness doctrine. To the contrary, both R.C. 4731.341 and R.C. 119.12(M) merely establish the procedure that a court must follow when considering a cognizable petition for relief.

**{¶ 29}** Appellants also seek review under R.C. 2721, which governs declaratory judgments. R.C. 2721, which contains language similar to that set forth in R.C. 4731.341 -- to the extent that it also requires a hearing -- is also subject to a jurisdictional analysis, including mootness. As with R.C. 119, there is no express or implied elimination of mootness under this statute. To the contrary, "[t]he Declaratory Judgment Act does not 'contemplate the rendition of advisory opinions, nor will the court pass upon remote, incidental or moot questions.'" *Loper v. Ohio Adult Parole Authority*, 10th Dist. Franklin No. 00AP-436, 2001 WL 721798, *3 (June 28, 2001), citing *Mentor Marinas, Inc. v. City of Mentor*, 11th Dist. Lake No. 10-133, 1984 WL 7262, *1 (Sept. 21, 1984), citing R.C .2721.02 staff notes. Accordingly, we disagree with appellants' contention that their claims "are not moot, because it is still possible for the trial court to grant some of the requested relief, i.e. the court must still determine whether the defendants' claims and

15.

advertisement violated the Ohio statutes and whether Appellees acted willfully in doing so."

{¶ 30} Pursuant to long-standing, well-established, and constitutionally mandated standards of jurisdiction, appellants' claims under R.C. 4731.341 and R.C. 2721 were properly found by the trial court to be moot. Appellants first and second assignments of error are found not well-taken.

**Appellants have not shown that this matter is one of "great public or general interest" such that an appellate court should review and decide it despite its mootness.**

{¶ 31} Appellants argue in their third assignment of error that an exception to the mootness doctrine should be made in this case as the matter appealed is one of "great public or general interest." Although there is such an exception recognized in the law, *see State ex re. White v. Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 16, "[o]rdinarily, * * * such an action should be taken only by the highest court in the state, rather than an intermediate appellate court." *In re Brown*, 10th Dist. Franklin No. 03AP-1205, 03AP-1206, 2005-Ohio-2425, ¶ 18. Appellants offer no evidence to show that such a course is justified in this case.

{¶ 32} Appellants argue that because the unlicensed practice of medicine, in general, is identified as "inimical to the public welfare" and "constitutes a public nuisance," it satisfies the requirement of being a matter of great public interest. By this logic, no case involving the unlicensed or unauthorized practice of medicine could ever

16.

be moot. Appellants then try to add that "temporal features" of R.C. 4731.341, including the "right to civil docket priority and a mandate to swiftly address the alleged nuisance," require clarification and justify this court's override of mootness

{¶ 33} We disagree that the matters at issue in the instant case are of such great public or general interest that we, as an appellate court, should apply this unusual exception to mootness. Accordingly, appellants' third assignment of error is found not well-taken.

## Conclusion

{¶ 34} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are to pay the costs of appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.      _____
                                                  JUDGE
Gene A. Zmuda, J.     

                                   _____
Charles E. Sulek, P.J.                             JUDGE
CONCUR.

                                   _____
                                   JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.