NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 4, 2014[*]
Decided November 5, 2014

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 14-1246

| | |
|---|---|
| LORENZO HALL, | Appeal from the United States District |
| *Plaintiff-Appellant,* | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 11-cv-446-JPG |
| | |
| RICK SUTTON and TERRI BRYANT, | J. Phil Gilbert, |
| *Defendants-Appellees.* | *Judge.* |

**O R D E R**

Lorenzo Hall, a Muslim who used to be an inmate at the Pinckneyville Correctional Center in Illinois, appeals the grant of summary judgment against him in his suit asserting First Amendment claims under 42 U.S.C. § 1983, as well as violations under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc–5, in connection with the prison's postponement of a feast celebrating the end

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

of Ramadan and the prison's refusal to supplement his diet during the fasting period. The district court determined that the two named defendants—a prison chaplain and a prison dietary manager—were shielded from liability based on qualified immunity. Because the defendants did not violate any clearly established law, we affirm.

Hall observes Ramadan, an annual religious celebration that requires him to fast during daylight hours for 30 days. Pinckneyville accommodates those Muslims participating in the Ramadan fast by providing them a pre-sunrise breakfast and a post-sunset dinner. These meals are the same as those given to non-practicing inmates, and the contents of the meals are fixed according to the Illinois Department of Corrections master menu, which ensures that the meals meet dietary standards.

Ramadan ends with Eid-ul-Fitr, a celebration consisting of a prayer service the day after fasting ends and a feast shortly thereafter (within three days of Ramadan's end). In 2010 Ramadan ended on Thursday, September 9, meaning that the prayer service should have taken place on September 10 and the feast by September 12. At Pinckneyville all religious activities must be supervised by a chaplain or religious volunteer, 20 ILL. ADMIN. CODE § 425.60(a), and that year Chaplain Rick Sutton was scheduled to be away from the prison during Ramadan's final weekend. Because of his absence, Sutton rescheduled the entire Eid-ul-Fitr prayer service and feast to take place on the following Monday, September 13. Hall objected to the rescheduling and says that Sutton rebuffed his objection dismissively, explaining that he would be out celebrating a "real American holiday." Hall says that he attended the celebration on Monday but it "didn't count," and only three inmates came.

Hall also had complaints about the number of meals available to him during Ramadan. In both 2010 and 2011, he maintains, the limited availability of meals on fast days led him to unnecessarily suffer "hunger pangs." During both seasons, he filed grievances with Pinckneyville's Dietary Manager, Terry Bryant, stating that his mid-day fast forced him to miss lunch. He complained that he should have been given a makeup meal later at night to be able to consume his daily caloric needs. He estimated that he consumed 1,000 to 1,500 fewer calories a day during these Ramadan seasons and may have lost weight. He acknowledged having access to the commissary where he could buy food to supplement his meals, but maintained that not eating a third meal each night sapped his energy and the tranquility necessary to observe Ramadan. Hall was transferred from Pinckneyville to the Western Illinois Correctional Facility in Mount Sterling, Illinois in November 2013.

Hall sued Sutton and Bryant for violating his free-exercise rights and his rights under RLUIPA—Bryant for failing to supplement the meals that Hall missed during his fasting periods and Sutton for failing to hold a timely Eid-ul-Fitr celebration.

The district judge largely accepted the magistrate judge's recommendation and granted the defendants' summary-judgment motion on qualified-immunity grounds. Bryant was entitled to qualified immunity, the court determined, because even if Hall could establish that being served only two meals a day substantially burdened the exercise of his religion, he could not point to any cases from the Supreme Court or this court clearly establishing that the two-meal practice violated the First Amendment. Sutton was also entitled to qualified immunity, the judge added, because even if (1) the late Eid-ul-Fitr celebration substantially burdened his religious practice and (2) Sutton's justification for not holding a timely prayer service and feast was pretext, in 2010 it was not clearly established by relevant case law that late religious services or meals violated the Constitution. The district court also determined that Hall could not prevail on his RLUIPA claim because the only relief available to him under that act—injunctive relief—had been mooted by his transfer out of Pinckneyville.

Qualified immunity "protects government officials from suit for damages when their conduct does not violate clearly established statutory or constitutional rights." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Determining whether a state official is entitled to qualified immunity involves two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir. 2013). If either inquiry can be answered in the negative, the official is entitled to summary judgment. Courts may address the two prongs of qualified immunity in either order. *Pearson*, 555 U.S. at 236. A right is clearly established if "a reasonable official would have understood what he is doing violates that right." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) (internal quotations and brackets omitted). To prove that the official violated a clearly established right, a plaintiff must use Supreme Court precedent, circuit case law, or a consensus of out-of-circuit case decisions. *See Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011); *Denius v. Dunlap*, 209 F.3d 944, 951 (7th Cir. 2000); *Hearring v. Sliwowski*, 712 F.3d 275, 282 (6th Cir. 2013); *Suboh v. Dist. Attorney's Office of Suffolk Dist.*, 298 F.3d 81, 93 (1st Cir. 2002).

On appeal Hall first challenges the district court's ruling that qualified immunity defeats his claim that Bryant's two-meal practice violated his free-exercise rights. Hall continues to point to a district court case, *Couch v. Jabe*, 479 F. Supp. 2d 569 (W.D. Va. 2006), which, he maintains, establishes a clearly established right to a supplemental meal during Ramadan. But as the district court properly explained, *Couch* did not represent a clear trend that should have forewarned Bryant that she was violating Hall's First Amendment rights by serving only two meals a day rather than three. First, that decision concluded only that there was a fact question precluding summary judgment about whether the provision of two meals a day (alleged by the prisoner to amount to only 1,000 calories per day) was unconstitutional; the court did not establish, as Hall suggests, any right to a supplemental meal. Further, a single district court decision does not show a clear trend of "controlling authority or a "robust consensus of cases" throughout the circuits, as required to show that a right is clearly established. *See Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023–24 (2014); *Denius*, 2009 F.3d at 950; *see also Kikumura v. Turner*, 28 F.3d 592, 596 (7th Cir. 1994) (matter not clearly established "based on the existence of one case from another circuit"). Of course many cases confirm inmates' Eighth Amendment right to adequate nutrition that meets dietary laws of their religion, *see Nelson v. Miller*, 570 F.3d 868, 879–80 (7th Cir. 2009); *Hunafa v. Murphy*, 907 F.2d 46, 47 (7th Cir. 1990); *McElyea v. Babbitt*, 833 F.2d 196, 198 (9th Cir. 1987), but such a broad right does not mean that Muslims observing the Ramadan fast have a clearly established right to a third or supplemental meal. *See Reichle*, 132 S. Ct. at 2094 n.5 (2012) (noting that a litigant may not use "high levels of generality to state that a specific right is clearly established); *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011); *Anderson v. Creighton*, 483 U.S. 635, 639–40 (1987).

Hall next generally disagrees with the district court's qualified-immunity analysis regarding Sutton, and maintains that Sutton rescheduled the Eid-ul-Fitr celebration purely out of malice. But Hall fails to address the actual basis of the district court's ruling—that in 2010 it was not clearly established that holding a religious service in prison late violated the First Amendment. Prison officials do not violate the First Amendment when they reschedule religious services because of time conflicts due to group activities or the unavailability of supervisory chaplains or volunteers to lead services. *Hadi v. Horn*, 830 F.2d 779, 786–88 (7th Cir. 1987) (no First Amendment violation when prison cancelled prayer service because of scheduling conflict and no chaplain); *Gladson v. Iowa Dep't of Corrs.*, 551 F.3d 825, 830–31, 834 (8th Cir. 2009) (no constitutional violation when scheduling needs forced Wiccan celebration to be

shortened by five hours); *Adkins v. Kaspar*, 393 F.3d 559, 571 (5th Cir. 2004) (no First Amendment violation when Yahweh Evangelical Assembly Sabbath and holy day celebrations cancelled because of lack of supervisory volunteers).

AFFIRMED.