[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16021

_____

D.C. Docket No. 7:15-cv-00124-WLS-TQL

MARQUISE ROBBINS,

Plaintiff-Appellant,

versus

WILLIAM ROBERTSON,
Food Service Director, Valdosta State Prison,
VALDOSTA SP WARDEN,

Defendants-Appellees,

JOHN AND OR JANE DOE,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(July 23, 2019)

Before ED CARNES, Chief Judge, JULIE CARNES, and CLEVENGER,[*] Circuit Judges.

JULIE CARNES, Circuit Judge:

Plaintiff Marquise Ali Robbins, a Muslim inmate previously incarcerated at Valdosta State Prison ("Valdosta Prison" or "the prison"), filed a *pro se* 42 U.S.C. § 1983 complaint against Warden Marty Allen and Food Service Director William Robertson, alleging that they forced him to choose between violating his religious dietary restrictions or suffering malnutrition. Their actions, Plaintiff claims, violated his rights under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), the First Amendment, and the Eighth Amendment. The district court dismissed each of the above three claims as failing to state a claim, and it denied Plaintiff's motion to file a second amended complaint. On appeal, Plaintiff challenges these rulings. After careful review, and with the benefit of oral argument, we dismiss in part, affirm in part, reverse in part, and remand for further proceedings.

## I.    BACKGROUND

In his original § 1983 complaint, Plaintiff sued Warden Allen, Food Service Director Robertson, and "John or Jane Doe," asserting RLUIPA, First Amendment, and Eight Amendment claims, as well as state-law negligence claims. After a

---

[*] The Honorable Raymond C. Clevenger, United States Court of Appeals for the Federal Circuit, sitting by designation.

magistrate judge screened the complaint pursuant to 28 U.S.C. § 1915A, the district court dismissed, without objection, Plaintiff's negligence claims and all claims against the fictitious defendants.  Plaintiff then amended his complaint as a matter of course.  His first-amended complaint supplemented his original complaint, adding Valdosta Prison as a defendant and clarifying his allegations.

Liberally construing his pleadings, Plaintiff alleged the following. Plaintiff's Islamic faith prohibits him from consuming meat or any animal products without knowing how the food product was prepared.  Accordingly, when he arrived at Valdosta Prison, he opted to receive the prison's "restricted"[1] vegan meals.  These meals, however, were "meager," "improperly prepared," "at times inedible," "diluted," "stretched," "unbalanced," and "unwholesome."  More importantly, Plaintiff alleged that the restricted vegan meals contained insufficient "nutritional value," "lacked sufficient calories," containing only half the nutritional value of the wholesome food distributed to other prisoners, and provided less than a total of 95 grams of protein daily.  All inmates received three meals daily on Monday through Thursday, and two meals daily on Friday through Sunday, but Plaintiff was unable to eat anything on Saturdays because the prison served only

---

[1]  The record does not clarify the difference between a "restricted" vegan meal and an "unrestricted" vegan meal, but we will continue to repeat the terminology the parties use, assuming that a "restricted vegan meal" is intended to be consistent with the dictates of Islamic dietary rules.

3

peanut butter sandwiches with jelly, and the jelly contained gelatin, which is a pork ingredient that his religion forbids.

He alleged that the prison sometimes failed to observe its own regulations, which were designed to ensure that inmates on restricted diets received appropriate meals. Contrary to their own regulations, prison officials prepared under-portioned meals that lacked sufficient protein, placed vegan meals next to non-vegan meals on food carts, and served vegan meals on food trays that did not hold enough food or were not properly color-coded, and therefore did not assure an inmate that his meal was a restricted vegan meal. Warden Allen also determined that inmates would receive only two, rather than three, meals on Fridays. Further, the meals were unsanitary and contaminated, as officers served food items while wearing gloves that frequently came into contact with rusty food slots; food remnants could be seen on the food trays; dishwashing chemicals sometimes polluted the coffee; beverage pitchers were also used for cleaning; and the ice cooler produced ice containing insects, dirt, and food crumbs.

Plaintiff alleged that, as a result of nutritionally inadequate meals, he suffered "physical, mental, and emotional anguish," including "throbbing headaches, constant fatigue from lack of energy, abdominal pains produced from constant hunger pangs, dizziness in the late night hours that prevented sleep, lack of concentration that prevented [his] ability to focus on simple daily routines such

4

as reading, writing, and exercising, and frequent weakness in [his] extremities," as well as weight loss. Plaintiff sought medical treatment due to his "prolonged nutritional condition," and on March 24, 2015 Nurse Seleska examined him. When he informed her that he had symptoms from lack of food, she said "oh you['re] just on a Marty Allen's diet," which Plaintiff believed "indicate[d] that Warden Marty Allen [was] well aware of the preparation and servings of the food trays, yet, he condone[d] the unbalanced nutrition of the meals." Nurse Seleska prescribed multivitamins and drew blood for further examination. A week or two later, Plaintiff was prescribed an additional medical nutritional meal supplement, which consisted of a meat sandwich, milk, and an apple or orange. The meat sandwich and milk were not consistent with a vegan diet, so he refused to ingest them, and for over two months prison officials disregarded his request for a peanut butter sandwich and soymilk.

Plaintiff alleged that he wrote letters to Food Service Director Robertson, who was responsible for the food service operations, and informed him that the inadequate diet was causing him to suffer from various ailments. He and other prisoners also filed grievances with Warden Allen, who was ultimately responsible for prison operations and inmate welfare. But "no action was taken," even though the prisoners had explained that the religious meals were inadequate. Plaintiff alleges that he faced "a Hobson's choice"—either eat the regular prison meals

5

forbidden by his religious beliefs or eat the restricted vegan diet in accordance with his religious tenets, but suffer from starvation and malnutrition.

According to Plaintiff, his restricted vegan diet was inadequate from January 2015, when he first received these meals, through April 2015. In apparent response to his various complaints, the meals temporarily improved from April 2015 through June 2015, but the meals again became unsatisfactory after that, from "6/15 and ongoing."[2] Plaintiff sought damages and injunctive relief.

Defendants moved to dismiss Plaintiff's first-amended complaint. Plaintiff opposed the motion and moved for leave to file a second-amended complaint that would replace the original John and Jane Doe defendants with a generic group of defendants: "VSP Kitchen Supervisors." According to the proposed second-amended complaint, the kitchen supervisors "knowingly with callous indifference improperly applied the restricted vegan menu to all the inmates who consumed the meals in the segregation unit," "failed to enact mandated standard operating procedures (SOP) and ensure [that the] directives and master menu [were] thoroughly complied with—and failed to adequately supervise inmate worker's preparation and service of meals that caused Plaintiff's injuries."

---

[2] Plaintiff was transferred from Valdosta Prison to Hays State Prison on September 21, 2016. Thus, he is alleging that inadequate meals resumed from June 2015–September 21, 2016.

A magistrate judge issued a report and recommendation ("R&R"), recommending that the district court deny Plaintiff's motion to file a second-amended complaint because he had delayed in identifying the prison kitchen supervisor defendants and had not alleged any specific facts regarding how many supervisors there were or how their conduct affected his original claims. The magistrate judge also recommended that the district court grant Defendants' motion to dismiss. The magistrate judge concluded that Plaintiff had not stated a claim for monetary relief under RLUIPA because that statute did not create a cause of action for monetary relief against prison officials in their individual capacities, and, as to any official capacity claim, the prison enjoyed sovereign immunity as a state agency. As for Plaintiff's RLUIPA injunctive-relief claim and his First Amendment claim, the magistrate judge held that Plaintiff had not pled a "substantial burden" on his religious beliefs because he relied on labels and conclusions, failed to explain how the food preparation impinged upon his religious beliefs, and did not describe food-preparation practices that rose above mere inconveniences. The magistrate judge also concluded that Plaintiff failed to state an Eighth Amendment claim because he had not alleged facts showing that Defendants knowingly provided less than reasonably adequate food or that the meals presented an unreasonable risk of serious harm, particularly because Plaintiff admitted that the prison provided supplements with the meals.

7

Over Plaintiff's objections, the district court adopted the R&R and dismissed Plaintiff's complaint. The district court denied Plaintiff's motion to file a second-amended complaint, agreeing with the magistrate judge that the amendment contained only conclusory and speculative allegations against an unknown number of kitchen supervisors. The court also agreed with the magistrate judge that Plaintiff's RLUIPA and First Amendment claims relied on mere labels and conclusions. Finally, regarding the Eighth Amendment claim, the court found that Plaintiff did not plausibly allege that the restricted vegan meals failed to provide a reasonably adequate diet of sufficient nutritional value to preserve health, or that Defendants acted with a culpable state of mind in depriving Plaintiff of an adequate diet.

## II.    DISCUSSION

On appeal, Plaintiff acknowledges that he was transferred from Valdosta Prison to Hays State Prison in September 2016. Nevertheless, he argues that his transfer does not moot his claim for injunctive relief against Valdosta Prison. He also argues that the district court erred in dismissing his complaint and abused its discretion in denying his motion to file a second-amended complaint. We discuss each issue in turn.

8

### A.    Mootness of Injunctive Relief

Citing *Hardwick v. Brinson*, 523 F.2d 798 (5th Cir. 1975), Plaintiff contends that his transfer from Valdosta Prison to Hays State Prison did not moot his request for injunctive relief because "Defendants have not assured the court that he will not be transferred back to [Valdosta Prison]," which he says is one of the few Georgia state prisons that can accommodate his religious dietary preferences.  Moreover he says he has complained about the same issues at Hays State Prison.

We review *de novo* whether a case is moot.  *Haynes v. Hooters of Am., LLC*, 893 F.3d 781, 784 (11th Cir. 2018).  When a case becomes moot on appeal, "we are divested of jurisdiction," *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993), and "must dismiss the appeal, vacate the district court's judgment, and remand with instructions to dismiss as moot," *Thomas v. Bryant*, 614 F.3d 1288, 1294 (11th Cir. 2010) (quotation marks omitted).

Our precedent forecloses Plaintiff's argument that his claim for injunctive relief is not moot.  "The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief" even when "there is no assurance that he will not be returned to the jail."  *McKinnon v. Talladega Cty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984).  Plaintiff has not shown that an exception to this rule applies.  There is no indication that Defendants attempted "to evade the jurisdiction of the court" by transferring him, *id.*, and

9

Plaintiff has made no showing that his complaints are capable of repetition, yet evade review. *See United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) ("A dispute qualifies for that exception only 'if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again.'").

Further, *Hardwick*, on which Plaintiff primarily relies, does not support his argument. In *Hardwick*, an inmate who had been transferred within the Georgia state prison system filed lawsuits in the Northern, Southern, and Middle Districts of Georgia, challenging the prison system's mail-censorship policies. *Hardwick*, 523 F.2d at 799–800. The inmate requested injunctive relief in the Southern and Middle Districts. *Id.* Importantly, the lawsuit in the Middle District, where the inmate was then incarcerated, named as a defendant the head of the state prison system, meaning that an injunction would bind all of the defendants in the three lawsuits if the inmate ultimately prevailed there. *Id.* at 800–01. Under these circumstances, the former Fifth Circuit held that the inmate's transfer from the Southern District to the Middle District did not moot his request for injunctive relief, but that he was entitled to pursue his injunctive-relief claim only in the district where he was currently incarcerated, namely, the Middle District of Georgia. *Id.*

*Hardwick* is not analogous to the present case. Plaintiff has not sued the head of the Georgia state prison system for a policy implemented systemwide, but instead seeks an injunction against two individuals who have authority only over Valdosta Prison—a place where he no longer resides. Thus, an injunction directing these officials to provide Plaintiff with an adequate vegan diet would be an empty order, as these officials no longer have any ability to provide Plaintiff with any food—nutritional or otherwise. Nor is Plaintiff's argument that a live controversy exists strengthened by the fact that he has brought "a similar suit against Hays State." *See McKinnon*, 745 F.2d at 1363 (rejecting similar arguments based on *Hardwick*). Indeed, that Plaintiff has filed a similar suit against the prison in which he resides—Hays State Prison—indicates that this is the institution where injunctive relief has the potential to provide effective relief. *See Hardwick*, 523 F.2d at 800–01.

In short, given Plaintiff's transfer to Hayes State Prison, an injunction directing his former prison officials to provide Plaintiff with a particular diet would provide Plaintiff with no relief. *See Flanigan's Enterprises, Inc. of Ga. v. City of Sandy Springs, Ga.*, 868 F.3d 1248, 1255 (11th Cir. 2017) (en banc) ("[T]he Supreme Court has routinely cautioned that a case becomes moot if an event occurs while a case is pending on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party." (quotation marks

11

omitted)), *cert. denied sub nom. Davenport v. City of Sandy Springs, Ga.*, 138 S.

Ct. 1326 (2018).

Because Plaintiff's request for injunctive relief is moot, we lack jurisdiction

to review his injunctive-relief claim. *Ethredge*, 996 F.2d at 1175. Accordingly,

we dismiss his appeal to the extent that Plaintiff appeals the dismissal of his

injunctive-relief claim, vacate that portion of the district court's order, and remand.

*Thomas*, 614 F.3d at 1294. On remand, the district court shall dismiss Plaintiff's

request for injunctive relief as moot.[3]

## B.    Dismissal for Failure to State a Claim

Plaintiff challenges the district court's determination that he failed to state a

claim under the First and Eighth Amendments.[4] "We review the district court's

grant of a motion to dismiss for failure to state a claim *de novo,* accepting the

allegations in the complaint as true and construing them in the light most favorable

---

[3] We note that, on appeal, Plaintiff characterizes his request for injunctive relief as arising from his RLUIPA claim, even though his complaint did not specify which claim supported such relief. To be clear, our mootness ruling applies equally to Plaintiff's RLUIPA, First Amendment, and Eighth Amendment claims to the extent that Plaintiff seeks an injunction based on these claims.

[4] We conclude that he has abandoned on appeal any challenge to the district court's determination that he failed to state a claim for damages, as opposed to injunctive relief, under RLUIPA. *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1250 n.10 (11th Cir. 2012) (concluding that the plaintiffs had abandoned an argument not contained in their appellate brief). In any event, the district court correctly concluded that RLUIPA does not create a cause of action against state officials in their individual capacities, *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007), *abrogated on other grounds by Sossamon v. Texas*, 563 U.S. 277 (2011), and sovereign immunity bars RLUIPA claims for money damages against state officials in their official capacities, *Sossamon*, 563 U.S. at 280, 293.

12

to the plaintiff." *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016). "To withstand a motion to dismiss under Rule 12(b)(6), a complaint must include 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plaintiff's allegations must amount to 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted) (quotation marks omitted).

### 1.    First Amendment Claim

Plaintiff has alleged that when the Valdosta Prison Warden and the Food Service Director provided him with food that complied with the dietary laws of his religion, this compliant food was often so nutritionally inadequate that it caused Plaintiff to become ill. He also alleges that when these prison officials provided him with nutritionally adequate food, the food often failed to comply with his Islamic religious beliefs. For example, Plaintiff points to weekend meals of peanut

13

butter and jelly sandwiches, which were perhaps nutritionally adequate, but were nonetheless non-compliant with his religious dietary laws because jelly contains gelatin obtained from pigs.  Plaintiff argues that, as a result of this months-long conduct by the Warden and Food Service Director, he faced "a Hobson's choice" between eating meals that violated his religious beliefs or suffering from malnutrition.

To state a claim under the First Amendment's Free Exercise Clause, a plaintiff must plead facts showing a "substantial burden" on a sincerely held religious belief.  *See GeorgiaCarry.Org*, 687 F.3d at 1256 ("First Amendment Free Exercise Clause precedent is clear:  a plaintiff must allege a constitutionally impermissible burden on a sincerely held religious belief to survive a motion to dismiss."); *see also Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989) ("The free exercise inquiry asks whether government has placed a substantial burden on the observation of a central religious belief or practice . . . .").  A "substantial burden," however, involves something more than an incidental effect or inconvenience on religious exercise and "is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly."  *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004).  In *Holt v. Hobbs*, the Supreme Court held that a policy substantially burdens a prisoner's religious exercise if it forces him to choose between engaging in conduct that seriously

14

violates his religious beliefs or facing a serious penalty.  135 S. Ct. 853, 862 (2015) (holding that a prison's grooming policy substantially burdened a Muslim prisoner's sincerely held religious belief that he must grow a beard).[5]

Applying the above principles, we agree with Plaintiff that the district court erred in dismissing his First Amendment free-exercise claim for failure to plead facts plausibly showing a "substantial burden" on his religious exercise.  For sure, many of Plaintiff's allegations were conclusory, and we do not fault the district court for so characterizing them.  For example, Plaintiff's allegations that his restricted vegan meals were "meager," "at times inedible," "improperly prepared," "diluted," "stretched," "unbalanced," and "unwholesome" constitute mere labels and conclusions that would be insufficient on their own to state a claim for relief. *Hunt*, 814 F.3d at 1221.

But Plaintiff also made some non-conclusory allegations that plausibly supported his claim that the Islamic-compliant vegan meals were so nutritionally deficient that he was forced to choose between abandoning his religious precepts (by eating religiously non-compliant food that was nutritionally adequate) or

---

[5]  We have applied similar definitions of "substantial burden" when assessing claims under both RLUIPA and the Free Exercise Clause.  *See Midrash Sephardi*, 366 F.3d at 1226 ("The Supreme Court's definition of 'substantial burden' within its free exercise cases is instructive in determining what Congress understood 'substantial burden' to mean in RLUIPA.").  Because the parties have encouraged us to apply the same definition of "substantial burden" to Plaintiff's RLUIPA and First Amendment claims, we assume without deciding that the term has an identical meaning in both contexts for purposes of this appeal.

15

suffering serious health consequences (by eating nutritionally inadequate food that was religiously compliant).  Specifically, Plaintiff alleged that:  (1) his meals lacked enough calories and protein, containing only half the nutritional value of normal meals served at the prison; (2) he could not eat any of the meals served on Saturdays; (3) as a result of his diet, he experienced an assortment of serious ailments, including throbbing headaches, abdominal pains from hunger pangs, dizziness that prevented sleep, weakness in his extremities, and weight loss; (4) after hearing of his ailments and performing bloodwork, prison medical personnel were concerned enough to prescribe vitamin and meal supplements to remedy inadequacies in Plaintiff's diet; and (5) for over two months, he could not eat the majority of the medical meal supplements that the prison provided.

Defendants are correct that Plaintiff could have pled additional details by, for example, specifying what food he was served at each meal and explaining how he arrived at a conclusion that his meals contained only half the calories of a regular prison diet.  And if Plaintiff had alleged only that his food was nutritionally inadequate, this bare assertion—with no supporting details—would be vulnerable to an argument that such a statement was little more than a label or conclusion, dressed up to mimic a plausible allegation.  But here Plaintiff alleged more.  His allegation that he was being served food that was nutritionally inadequate was bolstered by his additional allegation that he had manifested symptoms of

16

deteriorating health serious enough to warrant a conclusion by prison medical professionals that intervention and a change in diet were needed.

This additional allegation pushes over the plausibility line what might otherwise be deemed conclusory allegations. Thus, construing Plaintiff's allegations in the light most favorable to him, Plaintiff has asserted that he was forced to choose between his religion and his health, meaning that he has made a plausible claim that the named prison officials substantially burdened the exercise of his religious belief. Accordingly, we reverse the district court's dismissal of Plaintiff's First Amendment claim.[6]

---

[6] The parties have focused primarily on Plaintiff's contention that the meals served to him were so lacking in nutrition that he was forced to choose between malnutrition or his religious beliefs. We have addressed the same issue in this opinion. Plaintiff's complaint, however, also includes a variety of allegations concerning such things as the lack of sanitation in meal preparation and violations of prison policies concerning the way in which his meals were to be served. For example, the complaint asserts that Plaintiff's meals included contaminated coffee and unsterile ice cubes, that staff members wore unsanitary gloves, and that his vegan meals were sometimes "placed on food carts adjacent to the non-vegan meals . . . which resulted in an immediate contamination." Obviously, that a prison violates its own policies does not mean that it has violated a prisoner's constitutional rights. Further, it is not self-evident how the incidents described by Plaintiff impacted his compliance with the dietary tenets of his faith, nor does Plaintiff's complaint specify the frequency of these incidents. Indeed, even assuming an impact, the complaint fails to articulate how these practices created a substantial burden, as opposed to a mere incidental impact, on the exercise of his religious beliefs. *See Midrash Sephardi*, 366 F.3d at 1227.

Nevertheless, because the case is being remanded to litigate Plaintiff's claim regarding the nutritional inadequacy of his vegan meals and because, if adequately pled, some of these miscellaneous grievances could conceivably affect the ultimate decision as to whether Plaintiff's First Amendment rights were violated, the district court shall give Plaintiff an opportunity to amend his pleading to state a plausible First Amendment claim based on the sanitation issues and violations of prison policies identified in his existing complaint.

17

### 2.    Eighth Amendment Claim

The Eighth Amendment prohibits the infliction of cruel and unusual punishment by the government.  To successfully plead an Eighth Amendment claim against a government actor, a prisoner must allege facts that meet both an objective and a subjective standard.  *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (addressing the standard for proving an Eighth Amendment claim on the merits).  In an imprisonment context, when the "punishment" at issue is alleged to be abusive conditions of confinement, the objective standard looks to whether those conditions were severe enough to rise to the level of cruel and unusual punishment.  The Supreme Court has recognized that prisons must provide basic life necessities, such as "adequate food, clothing, shelter, and medical care," *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), as well as "reasonable safety," *Helling v. McKinney*, 509 U.S. 25, 33 (1993).  But only "extreme" deprivations of those basic life necessities constitute Eighth Amendment violations.  *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992).  Thus, a prisoner must plead facts showing that the condition in question was objectively "extreme," meaning that it "poses an unreasonable risk of serious damage to his future health or safety" that "society considers . . . to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." *Chandler*, 379 F.3d at 1289 (alteration accepted) (emphasis in original) (quotation marks omitted).

18

As to the subjective standard, the prisoner must demonstrate that the government actor accused of the abusive conduct was aware that he was acting cruelly. Thus, to satisfy this component, the prisoner must plead facts showing that the defendant prison official acted with deliberate indifference, meaning that "the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." *Id.* at 1289–90 (quotation marks omitted).

a.    Objective Component

In the litigation below, as well as here, Plaintiff based the objective component of his Eighth Amendment claim on the same factual allegations he used to support his First Amendment claim: specifically, even if compliant with the dictates of his religion, the vegan diet he was provided was so nutritionally inadequate that he risked serious damage to his health by persisting with that diet in lieu of standard, but non-compliant, prison fare that was in fact nutritionally adequate.

Having concluded that Plaintiff's allegations of malnutrition were too conclusory to constitute a plausible First Amendment claim, the district court likewise concluded that these same allegations were too conclusory to support an Eighth Amendment claim. Specifically, as to the objective component of the latter claim, the court stated: "Plaintiff failed to assert any factual allegations that the

19

restricted vegan meals were less than 'reasonably adequate food of sufficient nutritional value to preserve health' . . . ."

Clearly, if the requirements for finding an Eight Amendment violation in regard to a prisoner's diet are coterminous with those applicable to a First Amendment violation, then Plaintiff's allegation of a plausible claim under the latter would mean that he has also alleged a plausible claim under the former. And because the parties and the district court below apparently operated under the assumption that those standards are the same, a conclusion that Plaintiff plausibly alleged a First Amendment violation—by asserting that the only way he could comply with the dictates of his religion was to accept a nutritionally inadequate diet—logically suggests that this same assertion would give rise to an Eighth Amendment claim. That being so, and having reversed the district court's dismissal of the First Amendment claim, we are also obliged to reverse the dismissal of the Eighth Amendment claim.

But we clarify that, in so ruling, we are not necessarily accepting the premise that a First Amendment violation based on a prison's failure to provide meals compliant with the dietary rules of a prisoner's faith necessarily gives rise to an Eighth Amendment violation as well. Assume, for example, that a prison makes no effort to provide food that complies with a prisoner's particular religious practice, but that it nonetheless provides non-compliant food that well exceeds

nutritional standards.  On such facts, a prisoner would clearly have a First Amendment claim, but it is much less obvious that the prisoner would also have an Eighth Amendment claim, as the prison has offered him nutritionally adequate food.[7]

In fact, recognizing that the objective component of an Eighth Amendment claim is satisfied when prison officials "fail to provide prisoners with reasonably adequate food," *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1572 (11th Cir. 1985), we have held that "[a] well-balanced meal, containing sufficient nutritional value to preserve health, is all that is required." *Id.* at 1569–70, 1575 (quotation marks omitted) (affirming a district court's bench-trial order finding no Eighth Amendment violation, where jailhouse food occasionally contained foreign objects, was sometimes served cold, and often failed to meet certain food-preparation standards, but inmates received three meals daily, totaling 2,600 calories).  Neither we nor the Supreme Court have ever held that the Eighth Amendment requires prison officials to indulge inmates' dietary preferences— regardless of whether those preferences are dictated by religious, as opposed to non-religious, reasons.[8]  *See LaFevers v. Saffle*, 936 F.2d 1117, 1120 (10th Cir.

---

[7]  Given Plaintiff's allegation that the prison distributed "wholesome food" to prisoners not on a religious diet, there does not appear to be any dispute that adequate non-religious food was available to Plaintiff.

[8]  In *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995), we suggested that a vegetarian inmate's allegation that the prison provided an "inadequate diet . . . state[d] a valid constitutional claim"

1991) (holding that "the mere denial of a [Seventh Day Adventist's] requested vegetarian diet is insufficient to establish a cognizable Eighth Amendment claim" because he was not entitled "to obtain the diet of his choice" (quotation marks omitted)); *McEachin v. McGuinnis*, 357 F.3d 197, 199–201 (2d Cir. 2004) (affirming the dismissal of an inmate's Eighth Amendment claim that his prison had served him a non-religious diet for one week, where the district court found, among other things, that the plaintiff had not alleged that the non-religious food was nutritionally inadequate).

Plaintiff's counsel acknowledges on appeal that, as opposed to the First Amendment, the applicability of the Eighth Amendment here is perhaps less clear-cut, when she noted in her brief that food is "arguably inadequate" under the Eighth Amendment if it does not conform to an inmate's religious dietary restrictions and stated at oral argument that the Eighth Amendment question is "more open." Further, Plaintiff cites only First Amendment free-exercise cases[9] in support of the Eighth Amendment claim.

---

under the Eighth Amendment. *Id.* at 918. But we had no occasion to decide whether an inadequate vegetarian diet, as opposed to an inadequate diet generally, could establish a viable Eighth Amendment claim, because we affirmed the district court's summary judgment order based on the defendant's unrebutted evidence showing that the vegetarian diet provided was adequate. *Id.*

[9] *Eason v. Thaler*, 14 F.3d 8, 10 (5th Cir. 1994) (vacating a dismissal of an inmate's claim that "prison officials violated his right to the appropriate exercise of his Muslim religion by providing him only pork to eat during the lockdown" because "[p]rison officials have a constitutional obligation to provide reasonably adequate food and, absent some legitimate penological interest preventing the accommodation of a prisoner's religious restrictions, food which is anathema to

Ultimately, though, whether Plaintiff's allegations can properly state an Eighth Amendment claim is not a question that is before us because Defendants did not challenge this claim on that ground in their motion to dismiss. Instead, for purposes of a motion to dismiss, the parties and district court assumed that a determination that Plaintiff had adequately alleged a First Amendment claim would lead to the same conclusion regarding his Eighth Amendment claim—at least as to the objective prong of that claim. We follow the same approach here, with the caveat that we express no opinion on the correctness of its underlying assumption. For the above reasons, we reverse the district court's ruling on the objective component of Plaintiff's Eighth Amendment claim.

b.    Subjective Component

Assuming once again that Plaintiff had a right to religious meals under the Eighth Amendment, Plaintiff adequately pled the subjective component of his claim, alleging facts that plausibly showed Defendants' knowledge of, and disregard for, the risk of malnutrition. First, Plaintiff alleged that he and many

---

an inmate because of his religion is at least arguably inadequate" (footnotes omitted)); *Barnes v. Mann*, 12 F.3d 211, at *1 (6th Cir. 1993) (unpublished) (affirming a dismissal of a First Amendment free-exercise claim and noting that a prison "is only required to prepare a diet sufficient to keep prisoners in good health, or in the case of Muslims, a diet which provides them with adequate nourishment without the consumption of pork" (citations omitted)); *Hall v. Sutton*, 581 F. App'x 580, 582–83 (7th Cir. 2014) (unpublished) (noting in the context of a free-exercise discussion that "many cases confirm inmates' Eighth Amendment right to adequate nutrition that meets dietary laws of their religion," but citing for support only First Amendment free-exercise cases).

23

other prisoners filed grievances with Defendants, complaining that the food was inadequate. While this allegation standing alone does not necessarily support an inference that Defendants believed that these grievances indicated the existence of a serious health risk, Plaintiff also alleged that the restricted vegan meals temporarily improved in response to his grievances, suggesting that Defendants knew about his complaints and considered them significant enough to warrant responsive action. *See Goebert v. Lee Cty.*, 510 F.3d 1312, 1327 (11th Cir. 2007) (noting that the defendant "was obviously aware of the contents of [the inmate's] complaint because he responded to it"). Further, Plaintiff alleged that the meals reverted back to their prior, unsatisfactory state, suggesting that, although Defendants had been placed on notice of the nutritional deficits, they subsequently acted with deliberate indifference to Plaintiff's nutritional needs when they once again began serving deficient meals.[10] Thus, assuming that the Cruel and Unusual Punishment Clause requires prisons to provide adequate religious meals, Plaintiff sufficiently pled deliberate indifference to a serious health need, which satisfies the requirement for pleading the subjective component of this claim. Both the

---

[10] In her opening brief, Plaintiff's appellate counsel argued that Nurse Seleska's "Marty Allen's diet" comment indicated that Warden Allen was on notice that the religious meals were deficient. But in her reply brief, and with commendable candor, counsel concedes that this fact merely showed that the medical unit was familiar with similar complaints and believed that Warden Allen had designed the diet. We likewise do not interpret the nurse's comment as suggesting that Warden Allen acted with deliberate indifference.

24

objective and subjective component having been adequately pled, we reverse the district court's dismissal of Plaintiff's Eighth Amendment claim.

### C.    Motion to File a Second-Amended Complaint

"[W]e review the denial of a motion to amend a complaint for abuse of discretion," but "[t]he underlying legal conclusion of whether a particular amendment to the complaint would have been futile is reviewed *de novo*." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005).

On appeal, Plaintiff argues that the district court denied his motion to file a second-amended complaint naming Valdosta Prison kitchen supervisors as defendants because it already had dismissed his complaint for failure to state a claim.  Accordingly, Plaintiff contends that we should reverse the court's denial of his motion to amend if we reverse its dismissal of his claims.  The record belies Plaintiff's characterization of the district court's order.

Although Plaintiff is correct that the district court denied his motion to amend on futility grounds, he is incorrect that the district court found that amendment was futile based on its dismissal of his claims.  Instead, the district court independently concluded that the proposed second-amended complaint did not state a plausible claim against the Valdosta Prison kitchen supervisors because "Plaintiff did very little to show that his amendment raised enough factual allegations 'above the speculative level' against the unknown number of

25

individuals in the [Valdosta Prison] Kitchen Supervisor group." Plaintiff has abandoned on appeal any argument that the district court erred in this assessment.

In any event, the district court did not abuse its discretion in denying Plaintiff's motion to amend. Amendment is futile, and denial of leave to amend is justified, when a proposed amended pleading would not survive a motion to dismiss. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999). Here, Plaintiff's proposed amendment was futile because it lacked sufficient factual content to state a plausible claim for relief against the Valdosta Prison kitchen supervisors. As the district court correctly recognized, Plaintiff's allegations were conclusory and speculative. He merely alleged that unspecified individuals who worked as kitchen supervisors acted with "callous indifference" and failed to "enact mandated standard operating procedures," ensure that "directives and [the] master menu w[ere] thoroughly complied with," and "adequately supervise" meal preparation. Plaintiff alleged no facts supporting any of these assertions. Nor did he allege any facts suggesting that any kitchen supervisors consciously disregarded an excessive risk to inmate health, in violation of the Eighth Amendment, *Chandler*, 379 F.3d at 1289–90, or caused his restricted vegan meals to be nutritionally inadequate, thus substantially burdening his religious exercise in violation of the First Amendment, *Holt*, 135 S. Ct. at 862.

26

Accordingly, the district court did not abuse its discretion in denying Plaintiff's motion for leave to file a second-amended complaint.

## III.   CONCLUSION

We **DISMISS** Plaintiff's appeal from the dismissal of his injunctive-relief claim and **REMAND** with instructions that the district court dismiss his request for an injunction as moot.  We **AFFIRM** the denial of Plaintiff's motion for leave to file a second-amended complaint, **AFFIRM** the dismissal of his RLUIPA damages claim, and **REVERSE** the dismissal of his First Amendment and Eighth Amendment claims.  This case is **REMANDED** for further proceedings consistent with this opinion.